Argued July 10, affirmed October 23, 1968
# ZUROW, *Appellant, v.* FRIENDLY, *Respondent.*
### 446 P. 2d 110

*Thomas H. Tongue,* Portland, argued the cause for appellant. With him on the briefs were Hicks, Tongue, Dale & Strader, William M. Dale and Frank H. Hilton, Jr., Portland.

*Leo Levenson,* Portland, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, DENECKE and LUSK, Justices.

SLOAN, J.

Plaintiff is the former wife of defendant. She obtained a decree of divorce from defendant in 1956. The divorce decree incorporated a property settlement agreement that had been negotiated by the parties and their attorneys. Plaintiff, by the agreement, received property of substantial value. In 1964, defendant's wealthy father died. Shortly thereafter, defendant filed a suit for specific performance against his father's estate by which he alleged that he and his father had, in 1951, entered into an enforceable contract whereby the father agreed to make certain specific provisions for defendant in his will. Defendant alleged he had given valuable consideration for the contract.[1] Defendant's suit against the estate was settled for benefits to defendant valued at more than $300,000.

Plaintiff then filed the instant suit in which she alleges that when the property settlement agreement was being negotiated defendant fraudulently concealed the information that defendant then possessed this alleged potential property right against the estate that his father might eventually leave. She seeks to impose a constructive trust on one-half of the amount defendant received from his father's estate. The trial court found for defendant. The court found that there had not been an enforceable contract in existence between defendant and his father.

---

[1] Defendant alleged that his father had promised to bequeath him a life income of $2,000 per month plus valuable real property.

The evidence relative to the alleged contract between defendant and his father reveals that in 1951 defendant was a practicing lawyer in San Francisco. He and plaintiff owned a home there and had no desire to leave. Defendant's father importuned them to abandon their San Francisco life and to move their home to Portland. The father wanted the comfort of his only child and his family and wanted defendant to manage his substantial property interests. The father made many proposals of financial benefit to defendant and plaintiff as an inducement. These proposals were eventually incorporated in a much negotiated written agreement between defendant and his father which provided for the terms of defendant's employment by his father in Portland. This agreement contained no reference to any promise by the father to provide further for defendant by the father's will. In 1952, defendant and plaintiff did move to Portland in accordance with the written agreement defendant had made with his father.

Prior to the divorce of plaintiff from defendant in 1956, the parties and their attorneys had negotiated for over a year in an effort to reach a property settlement agreement. The evidence is most convincing that both parties were hard bargainers and left few dollars or property rights unexamined. In the property settlement agreement eventually executed, and approved in the divorce court, plaintiff relinquished any right to any inheritance or expectancy that defendant might thereafter receive. She received property that was valued by defendant at about $160,000.

In the instant suit plaintiff alleged, and for her to recover it is essential that she prove:

a. That the agreement between defendant and his

father, footnote 1, became an actual enforceable contract when the defendant and plaintiff still lived in San Francisco.

b. That defendant completed substantial performance of his obligation on the contract when he abandoned his home and law practice in San Francisco and moved to Portland.

c. That by reason thereof the alleged contract obligating the father to so provide by his will became an executed contract when plaintiff and defendant still resided in San Francisco and the property rights of the contract vested in plaintiff and defendant as community property.

d. That defendant's alleged fraud, as manager of the community property, in failing to reveal the existence of the contract during the property settlement negotiations entitles plaintiff to impose a constructive trust on her one-half of the community property.

This is the theory of plaintiff's case on which she elected to stand rather than by an attempt on her part to petition the divorce court to set aside the property settlement agreement and reassess the property rights of the parties with consideration being given to the result of the alleged fraud.

For our purposes the crucial allegation is:

"* * * The rights of defendant in said agreement with his father comprised community property under the laws of California, and plaintiff had a vested one-half interest therein with the defendant without regard to whether the plaintiff had knowledge of such property right."

We assume only for this decision that California law applies.

■ Plaintiff claims that the evidence supports the theory that the alleged oral contract between defendant and his father was fully performed and consummated and became an enforceable property right before the parties left California. We cannot agree. The evidence simply does not sustain such a conclusion. We have mentioned that the actual written agreement between defendant and his father, which had been long and carefully negotiated, contained no intimation of such an additional oral promise. This omission in a hard bargain is significant. But even if there had been an oral agreement, there is no evidence that its performance was consummated, or even begun, before the parties left California.

■ Plaintiff alternatively argues that even if she has failed to prove the complete performance of the contract in California she is entitled to an apportionment of the amount that would be attributable to performance in California. California does appear to follow an apportionment rule. See Note, 20 So Calif L Rev 282 (1947). The answer to this contention is the same as that expressed in *Lakenan v. Lakenan*, 1967, 64 Cal Rptr 166, at 169:

> "Plaintiff argues that such executor's fee should have been treated as community property as to that portion thereof which represented compensation for services defendant performed during the marriage. The difficulty with accepting this argument is twofold. First, as is stated in Estate of Heck, supra, it is impossible to arrive at a proportionate amount to be allowed for an executor's services and second, plaintiff fails to direct the court's attention to any evidence in the record upon which the court could have made such an allocation. Under these circumstances, the executor's fee, no portion of which was due or owing at the time of trial, was a mere ex-

pectancy, not subject to division as community property. * * *."

The same weakness exists in this plaintiff's claim for any apportionment.

We, therefore, agree with the trial court that plaintiff failed to prove the allegations of her complaint. She particularly failed to prove that the contract between defendant and his father was a valid, enforceable, executed contract in California with community property rights vested as of that time. Plaintiff devotes much argument to the inconsistency of defendant's claim of a contract in the suit against his father's estate and his denial of a contract in the instant case. What defendant denies in the instant case is the allegations of plaintiff's complaint that the contract became viable and property rights vested in California. He argues that to have been enforceable, he was obliged to perform until his father's death. We are unconvinced that plaintiff has established her right to claim a vested community interest in the claimed property as of 1952.

Affirmed.

DENECKE, J., specially concurring.

This is a perplexing case. I reach the same result as the majority, but by different reasoning.

The plaintiff's suit is grounded upon the proposition that the rights acquired by the defendant under the contract with his father are community property. The plaintiff assumes this because at the time the contract was entered into the parties were residents of California, a community property state. The law of California and other community property states is that property acquired during coverture, with excep-

tions not applicable, is community property. 1 de Funiak, Principles of Community Property, 158, § 66 (1943).

As a general rule, whether or not personal property acquired during coverture is community property is decided by the law of the parties' domicile at the time the property is acquired. McKay, Community Property (2d ed), 440, § 648. However, if the parties' domicile at the time of the acquisition of the property has no lasting or special significance to the property or its acquisition there is no reason to apply the law of domicile. That I believe is the situation in the instant case.

The parties did live in California when the contract was entered into; however, the initial performance required under the contract was moving from California and establishing domicile in Oregon. I agree with the majority that the contract also required the defendant to assist in the management of his father's business in Oregon and required the defendant and his family to have frequent social contact with his father in Oregon. It would seem to be barren reasoning to hold that because the parties lived in California at the moment the contract was entered into California law would determine the status of property rights arising from a contract. Once this contract was entered into California had little or no interest in these parties or their contract rights.

In my opinion, the law of Oregon applies and any right the defendant secured under the contract with his father was separate property.

Not completely in point, but closely analogous is this statement from 1 de Funiak, Principles of Community Property, supra, at 246-247, § 91:

"* * * In the unusual event of movable property being acquired while the spouses are en route

from the place of the celebration of the marriage to the intended new domicile, the law of the new domicile should be applied to determine the nature of the spouses' interests in the property, not only because if any contract at all is to be implied between the spouses as to what law shall govern their rights it must be the law of their intended domicile, but also because movable property, according to the Spanish principles in such a case, belonged not to the place where it was temporarily but to the place whither it was to be taken and should be dealt with according to the laws of that place. * * *"

*Fooshe v. Commissioner of Internal Revenue,* 132 F2d 686 (9th Cir 1942), is closer in point. The petitioner was employed in Missouri by an insurance company. He was married. The company entered into a contract with him in Missouri, hiring him as a manager in California. Plaintiff moved to California and on his federal tax return divided with his wife his income received in California as community property. The government claimed it was separate property. The court said:

"The Commissioner contends the law of California so regards the money acquired by the performance in California of the conditions or covenants of a contract executed in a separate property state. We do not agree. * * *" 132 F2d at 687.